**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                              No. CR 06-2262 JB

ENRIQUE QUEZADA-ENRIQUEZ,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Motion to Suppress Physical Evidence and Statements, filed November 16, 2006 (Doc. 25)("Suppression Motion"). The Court held an evidentiary suppression hearing on February 1, 2007. The primary issues are: (i) whether the United States Magistrate Judge properly found probable cause existed before authorizing the search of Defendant Enrique Quezada-Enriquez' residence where the affidavit for the warrant did not corroborate the confidential informant's information about the crime, but did corroborate other details that the confidential informant provided; and (ii) whether, if the warrant or the application was defective, the good-faith exception to the exclusionary rule nonetheless permits the United States to introduce the seized evidence and the fruits of the search at trial. Because the Court concludes that the Magistrate Judge properly found probable cause existed, and because the good-faith exception would permit the introduction of the evidence even if the warrant was defective, the Court will deny Quezada-Enriquez' suppression request.

## FINDINGS OF FACT

Rule 12(d) of the Federal Rules of Criminal Procedure requires the Court to state its essential findings on the record when deciding a motion that involves factual issues. The findings of fact in this Memorandum Opinion and Order shall serve as the Court's essential findings for purposes of rule 12(d). The Court makes these findings under the authority of rule 104(a) of the Federal Rules of Evidence, which requires a judge to decide preliminary questions relating to the admissibility of evidence, including the legality of a search or seizure and the voluntariness of an individual's confession or consent to search. See United States v. Merritt, 695 F.2d 1263, 1269 (10th Cir. 1982). In deciding such preliminary questions, the rules of evidence, except those with respect to privileges, do not bind the Court. See Fed. R. Evid. 1101(d)(1). Thus, the Court may consider hearsay in ruling on a motion to suppress. See United States v. Merritt, 695 F.2d at 1269.

1.      The case agent, Frank Ortiz III of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), obtained a search warrant with his sworn affidavit. See United States' Response to Defendant's Motion to Suppress Evidence and Statements ("Response"), Exhibit 1, Search Warrant (dated September 25, 2006), filed November 29, 2006 (Doc. 28)("Warrant"); Response, Exhibit 2, Affidavit of Frank Ortiz III (executed September 25, 2006)("Affidavit").

2.      According to the affidavit, Ortiz received, on September 6, 2006, information from a "confidential informant" ("CI") to the effect that Quezada was in possession of a firearm and ammunition. Affidavit at 2.

3.      The affidavit explains that the CI had observed Quezada in possession of a loaded firearm and ammunition in his residence and in his Chevrolet Tahoe. See id.

4.      The affidavit notes that the CI described the firearm as a "black 9mm pistol." Id.

5.      The affidavit states that the CI informed Ortiz that a person the CI identified as Enrique Quezada lives at 4712 Shana Lane, SW, in Albuquerque, New Mexico.  See id.

6.      The affidavit maintains that the CI gave a physical description for Quezada, explaining that the individual is a male, about 30 years old, approximately 5'5" tall and 165 pounds, with black hair and brown eyes.  See id.

7.      The affidavit represents that the CI also explained that Quezada is an undocumented Mexican national who is in the United States illegally.  See id.

8.      The affidavit asserts that the CI further explained that Quezada drives a white-colored Chevrolet Tahoe, bearing Texas license plate number 186-JPN.  See id.

9.      The affidavit also explains that, after Ortiz received the tip, and acting on that information, he and two other ATF agents set up surveillance on Quezada's residence and property.  See id.

10.     The affidavit notes further that the ATF agents conducted the surveillance over a three-day period: September 8, September 18, and September 19, 2006 at 4712 Shana Lane.  See id.

11.     Additionally, the affidavit states that Ortiz observed several vehicles parked in the residential curtilage.  See id. at 2-3.

12.     The affidavit provides that one of the vehicles that Ortiz observed was the white-colored Chevrolet Tahoe, bearing Texas license plate number 186-JPN.  See id. at 2.

13.     The affidavit maintains that the ATF agents obtained information regarding Quezada's immigration status; and that they learned his true name and at least one alias that he had used in the past.  See id. at 3.

14.     The affidavit states that the ATF agents also obtained information regarding

-3-

Quezada's criminal history.  See id.

15.    The affidavit also states that Ortiz obtained a photograph of Quezada and showed it to the CI, who verified that the individual pictured is the person he knows as Quezada.  See id.

16.    The affidavit represents that Ortiz also traced the Chevrolet Tahoe to Juarez, Mexico. See id.

17.    By querying AUTOTRACK and utility records, the affidavit notes, Ortiz verified that the electrical service for the residence located at 4712 Shana Lane was under Quezada's name.  See id.

18.    The Court finds the testimony Ortiz provided at the February 1, 2007 hearing credible.

19.    The ATF agents did not observe Quezada break the law or possess a firearm.  See Hearing Transcript at 22:22-23:2 (Ortiz)(taken February 1, 2007)("Transcript"); id. 37:1-39:5 (Ortiz).

20.    The ATF agents did not see Quezada engage in any conduct that would lead a reasonable person to believe he possessed a firearm.  See id. at 37:1-39:5.

21.    Ortiz prepared the affidavit and application for the search warrant, incorporating the information he received directly from the CI and from his independent investigation.  See Affidavit at 1-4; Transcript at 15:6-13.

22.    With respect to the information contained in the affidavit, Ortiz testified at the hearing that: "I'm looking to corroborate very specific information from a reliable[,] credible informant, and to the very best of my ability and that's what I put down on the warrant . . . ."  Transcript at 38:20-23.

23.    Ortiz also testified at the hearing that "[he] stand[s] by [his] warrant a hundred

-4-

percent." Id. at 39:3-5.

24.     The warrant for the search was based on information that Ortiz received from the CI and from his follow-up investigation.  See Warrant; Affidavit at 1-4.

25.     Using the uncorroborated and corroborated allegations by the unidentified CI, the ATF agents' observations of Quezada and his residence during the three-day surveillance period, and the information the ATF agents obtained from their own investigation, the agents successfully obtained a warrant to search Quezada's residence for firearms and ammunition.  See Affidavit at 1-4; Warrant.

26.     In the affidavit, Ortiz attested to having received information from an ATF documented CI  who was "credible and reliable," and that the CI has provided "information in the past [that] has led to the seizure of . . . firearms and ammunition . . . ."  Affidavit at 2.

27.     The affidavit represents that the CI's credibility was based in part on the fact that the CI is not working off criminal or other charges, and has provided information previously that has led to narcotics, currency, and firearms and ammunition seizures.  See id.

28.     The affidavit asserts that Ortiz and other agents followed up to corroborate the information the CI provided.  See id.

29.     The affidavit also notes the physical appearance of Quezada's residence, describing it as a pink, single-family, single-level double-wide mobile home converted to a house facing North and parked at the end of Shana Lane, a cul-de-sac.  See id.

30.     The affidavit describes the numbers 4712 marked in black lettering on the mail box outside of the residence.  See id.

31.     In addition, the affidavit explains that queries of NCIC, ICE, and New Mexico DMV

databases confirmed Quezada's true identity as Enrique E. Quezada-Enrique, a/k/a Arnoldo
Enriquez-Jaquez, with a date of birth of April 8, 1976, Mexican nationality, and a birthplace of
Chihuahua, Mexico.  See id. at 3.

      32.    The affidavit also states that the query verified that Quezada had previously been
deported from the United States.  See id.

      33.    Based on the information that Ortiz provided to him, the Honorable Robert H. Scott,
United States Magistrate Judge, found that probable cause existed to issue a search warrant on
September 25, 2006.  See Warrant.

      34.    When the agents executed the search warrant on Quezada's residence at 4712 Shana
Lane, they encountered Quezada's spouse, Ana Tovar; she told them that they kept a firearm for
protection.  See Transcript at 40:1-16 (Ortiz).

      35.    The agents then discovered the firearm and ammunition based on the warranted
search.  See Indictment at 1, filed October 25, 2006 (Doc. 16).

      36.    The agents seized a Star (brand) .45 caliber pistol and Remington-Peters (brand)
ammunition.  See id.

## PROCEDURAL BACKGROUND

The seizure at 4712 Shana Lane forms the basis of the federal weapons charges currently
pending against Quezada.  On September 27, 2006, Quezada was charged by criminal complaint for
violating 18 U.S.C. § 922(g)(5), alien in possession of a firearm.  See  Criminal Complaint, filed
September 27, 2006 (Doc. 1).  On October 25, 2005, a Grand Jury indicted Quezada for the same
offense.  See Indictment.

On November 16, 2006, Quezada filed this motion to suppress physical evidence and

statements, in which he moves the Court, pursuant to rules 12(b)(3) and 26.2 of the Federal Rules of Criminal Procedure, for an Order suppressing from use at the trial the following evidence that he contends was unlawfully seized: (i) all physical evidence, including, the firearm and ammunition seized from his residence as a result of the execution of an allegedly unlawful and improperly obtained search warrant; (ii) all statements or impromptu comments that he made in the course of an official interrogation or otherwise during or immediately subsequent to the execution of the search warrant; (iii) all observations by the seizing law enforcement agents, including, observations of the Defendant's or any other person's comportment and demeanor, at the time of and immediately subsequent to the execution of the search warrant; and (iv) all evidence or "fruits of the poisonous tree" obtained directly or indirectly as a result of the exploitation of any unlawfully seized evidence. Suppression Motion at 1-2. Quezada has ascertained that Assistant United States Attorney Kenneth Gonzalez opposes this motion. See id. at 5. The United States filed a response. See Response. Quezada requests an evidentiary hearing to support his motion. See Suppression Motion at 5.

Both in its written response and at the hearing, the United States requested that the Court dispose of Quezada's motion without a hearing. See United States v. Chevez-Marquez, 66 F.3d 259, 261 (10th Cir. 1995)(stating that a court is not required to hold an evidentiary hearing when the defendant fails to meet his burden of showing that disputed issues of material fact exist).

At the hearing, Quezada said he would make Ortiz his witness if the United States did not put him on the stand. See Transcript at 11:18-20 (Quezada). The United States maintained that the Court should look only at the four corners of the affidavit and make its decision solely by an examination of the affidavit. See id. at 10:15-11:5 (Gonzales). Because the Court was uncertain what issues of fact there might be, and because the United States was also raising the good-faith

exception to the exclusionary rule as an alternative ground for denial of the motion, the Court granted Quezada's request for an evidentiary hearing.  See id. at 11:21-12:2 (Court).

The Court heard from Ortiz.  See id. at 13:7-44:12 (Ortiz).  Although two other agents involved in the search of Quezada's residence were present, neither side chose to call them.  See id. at 12:8-10 (Gonzales); id. at 44:17-23 (Gonzales, Esparza, & Court).

The Court sustained one objection to a question to Ortiz that Ortiz represented, under oath, might endanger revealing the identity of the CI.  See id. at 32:21-33:14 (Gonzales, Oritz, & Court). The Court and the United States noted that Quezada had not asked for a Franks hearing and that the Court was reluctant to turn the hearing into such a proceeding without ample notice to the government.[1]  See id. at 32:21-33:2 (Gonzales); id. at 33:5-14 (Court).  The Court noted, however, that, if Quezada wanted to raise a Franks challenge, the Court was denying him an opportunity to raise these questions in this proceeding without prejudice to him doing so at another time.  See id. at 33:10-14 (Court).

## RELEVANT FOURTH AMENDMENT LAW

### 1.    Probable Cause.

The court reviews, with deference to the Magistrate Judge's determination, the affidavit submitted in support of a search warrant "to ensure that the magistrate judge had a 'substantial basis' for concluding that the affidavit in support of the warrant established probable cause." United States

---

[1] To invalidate a facially valid warrant a defendant must show that the affiant "knowingly and intentionally, or with reckless disregard for the truth" included false statements or omitted material facts and that the statements were necessary to the finding of probable cause. Franks v. Delaware, 438 U.S. 154, 155-56 (1978).  The hearing at which such a showing is attempted has become known as a "Franks hearing."

v. Nolan, 199 F.3d 1180, 1181 (10th Cir. 1999)(quoting Illinois v. Gates, 462 U.S. 213, 236 (1983)).

See United States v. Cantu, 405 F.3d 1173, 1176-77 (10th Cir. 2005)("The magistrate's

determination of probable cause is entitled to great deference.  Our review is limited to ensuring that

the magistrate's determination had a substantial basis.")  "The task of the issuing magistrate is simply

to make a practical, common-sense decision whether, given all the circumstances set forth in the

affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a

particular place." United States v. Nolan, 199 F.3d at 1182 (internal quotations omitted).

"The test is whether the facts presented in the affidavit would 'warrant a man of reasonable

caution' to believe that evidence of a crime will be found at the place to be searched." Id. at 1183

(quoting Texas v. Brown, 460 U.S. 730, 742 (1983)).  To determine whether a search warrant

contains enough information to satisfy the probable cause requirement, courts must look at the

totality of the circumstances present in any particular case, see Illinois v. Gates, 462 U.S. at 230,

United States v. Tisdale, 248 F.3d 964, 970 (10th Cir. 2001), and the court must view the issuing

judge's decision in the light most favorable to the government, United States v. Tisdale, 248 F.3d at

970.  "In assessing whether the warrant was based on probable cause, [the court does not view] each

supporting fact or episode in isolation.  While one fact alone may not support a finding of probable

cause, a cumulative assessment may indeed lead to that conclusion." United States v. Cantu, 405

F.3d 1177.

In testing the sufficiency of probable cause, courts may look at information received from a

CI so long as other matters contained in the warrant corroborate the informant's statement.  See

Jones v. United States, 362 U.S. 257, 269 (1960); United States v. Hager, 969 F.2d 883, 887 (10th

Cir. 1992)(holding probable cause existed where independent investigation corroborated informant's

report).  "Corroboration of apparently innocent details of an informant's report tends to indicate that

other aspects of the report are also correct, because an informant who is right about some details is

probably also right about others."  <u>United States v. Lundy</u>, 164 Fed. Appx. 332, 334 (4th Cir.

2006)(internal quotations omitted). <u>See</u> <u>United States v. Gary</u>, 24 Fed. Appx. 862, 864-65 (10th Cir.

2001)(finding probable cause existed where an independent investigation corroborated the "innocent

information" an informant provided); 79 C.J.S. § 67, Searches and Seizures (stating that an

informant's information may establish probable cause where it is corroborated by independent police

work, an additional informant, or other personal knowledge of an officer; "[e]ven corroboration of

portions of the information which do not in and of themselves involve criminal activity may be

sufficient").

### 2.   <u>Good-Faith Exception to the Exclusionary Rule.</u>

The Supreme Court of the United States, in <u>United States v. Leon</u>, 468 U.S. 897 (1984),

created an exception to the exclusionary rule.  The <u>Leon</u> Court held that evidence seized pursuant

to a neutral and detached magistrate's issuance of a warrant later found invalid may still be admissible

if the executing officer acted in objective good faith and with reasonable reliance on the warrant. <u>See</u>

<u>United States v. Leon</u>, 468 U.S. at 905, 922-23.  In determining whether the good-faith exception

should apply, the Tenth Circuit has ruled:

> The good faith inquiry is confined to the objectively ascertainable question of whether
> a reasonably well-trained officer would have known the search was illegal despite the
> issuing judge's authorization.  To answer this question, we must consider all of the
> circumstances and assume the executing officers have a reasonable knowledge of
> what the law prohibits.

<u>United States v. Reed</u>, No. 05-5226, 2006 WL 3441532, at *8 (10th Cir. November 30,

2006)(internal citations and quotations omitted)(citing <u>United States v. Corral-Corral</u>, 899 F.2d 927,

931-32 (10th Cir. 1990)).

While evidence seized pursuant to a warrant should be suppressed only in unusual cases, in

United States v. Leon, the Supreme Court recognized four situations in which an officer would not

have reasonable grounds for believing that a search warrant was properly issued, and, thus, to which

the good-faith exception would not apply:

> (i) the issuing judge was misled by information in an affidavit that the affiant knew
> was false or would have known was false except for his reckless disregard for the
> truth; (ii) the issuing judge wholly abandoned his judicial role and failed to perform
> his neutral and detached role; (iii) the affidavit issued to support the warrant is so
> lacking in indicia of probable cause as to render official belief in its existence entirely
> unreasonable; and (iv) the warrant is so facially deficient that the executing officers
> cannot reasonably presume it to be valid.

United States v. Reed, 2006 WL 3441532, at *9 (citing United States v. Leon, 468 U.S. at 918, 923).

In such situations, the good-faith exception to the exclusionary rule does not apply and suppression

may be the appropriate remedy.

## ANALYSIS

The search warrant upon which the ATF agents relied to enter Quezada's residence did not

lack probable cause and was, therefore, lawful.  As a consequence, the Court need not and should

not suppress all of the evidence the agents and police seized when they executed the search warrant.

The Court thus need not suppress, as fruit of the poisonous tree, the statements Quezada made after

execution of the search warrant.  See Wong Sun v. United States, 371 U.S. 471, 485-88 (1963).

## I.   THERE WAS PROBABLE CAUSE FOR ISSUING THE SEARCH WARRANT.

In his search warrant affidavit, Ortiz included several of the CI's personal observations and

information that had been obtained based upon them.  See Affidavit at 1-3; Illinois v. Gates, 462 U.S.

at 234 ("[E]ven if we entertain some doubt as to an informant's motives, his explicit and detailed

description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case."). The CI personally observed Quezada with a firearm, and he described the firearm as a "black 9mm." Affidavit at 2. The CI also identified Quezada and further explained that Quezada is in the United States illegally. See id. at 2.

The information that the CI provided was reliable; Ortiz and other investigating agents corroborated much of the information that the CI provided and, practically, all that could be reasonably corroborated without a search. See Affidavit at 2-3; United States v. Hager, 969 F.2d at 887 (holding probable cause existed where an independent investigation corroborated informant's report). After receiving the information from the CI, the agents initiated an investigation to corroborate it. See Affidavit 1-4. The agents independently corroborated Quezada's identity, alias, and immigration status. See Affidavit at 2-3. The agents also confirmed that Quezada was the person on record for utility service at the residence the CI identified, 4712 Shana Lane. See Affidavit at 3. Further, the agents corroborated that the vehicle the CI identified as Quezada's, a white Chevrolet Tahoe with Texas license plate number 186-JPN, was parked at 4712 Shana Lane. In addition, Oritz noted in the search warrant affidavit that the CI had previously provided reliable information and that he was not working off criminal charges. See id. at 2. It does not trouble the Court that the agents did not corroborate the actual criminal activity that the CI reported.

The facts of this case are similar to those present in United States v. Lundy. In United States v. Lundy, the United States Court of Appeals for the Fourth Circuit considered whether probable cause for a search existed where the affiant relied on information from a CI. The CI telephoned a Drug Enforcement Administration ("DEA") agent to inform him that he had witnessed two individuals "cooking" crack cocaine. See United States v. Lundy, 164 Fed. Appx. at 333. The

informant provided a description and address of the residence where the conduct occurred, identified one of the individuals by name, told the agent that there were two vehicles parked at the residence, and described the vehicles.  See id.  The DEA agent relayed the CI's information to a local investigator.  See id.  The investigator dispatched a deputy who verified the CI's description of the residence and that the vehicles the CI described were parked at that residence.  See id.  The investigator then prepared a search warrant affidavit in which he included all of the information that the CI had provided, that the CI had provided reliable information in the past, and stated that a deputy had confirmed the CI's description of the location and the two vehicles parked there.  See id.  Based on that information, a magistrate judge issued a search warrant for the residence the CI had identified. See id.  The Lundy court held that the affidavit had demonstrated probable cause, because it provided a substantial basis to believe that criminal activity was probably taking place at the residence and that contraband would be found there.  See id. at 334.  In reaching that conclusion, the Fourth Circuit stated: "Corroboration of apparently innocent details of an informant's report tend to indicate that other aspects of the report are also correct, because an informant who is right about some details is probably also right about others."  Id.  See United States v. Gary, 24 Fed. Appx. 862, 864-65 (finding probable cause existed where an independent investigation corroborated the "innocent information" an informant provided); 79 C.J.S. § 67, Searches and Seizures ("Even corroboration of portions of the [CI's] information which do not in and of themselves involve criminal activity may be sufficient").

As in United States v. Lundy, the agents in this case corroborated much of the information the CI provided.  Like the officers in United States v. Lundy, however, they did not corroborate the actual occurrence of criminal activity or presence of contraband at the location in question.  Despite the absence of such, the Lundy court, given the totality of the circumstance as related in the search

warrant affidavit, found that probable cause existed.  This Court, in similar fashion, based on Oritz'

affidavit's assertions that the CI had provided reliable information in the past, that the CI saw the

firearm firsthand, and that an independent investigation corroborated much of the information the CI

provided, concludes that probable cause existed for a warrant authorizing the search of Quezada's

residence.

Considering Magistrate Judge Scott's decision, based on the totality of the circumstances

approach, and viewed in the light most favorable to the government,  see United States v. Tisdale,

248 F.3d at 970, the Court finds that Magistrate Judge Scott properly found that probable cause

existed before issuing the search warrant.  It is not accurate to describe, as Quezada does, Ortiz'

search warrant affidavit as "bare bones."  See Suppression Motion at 4.  Assessing the facts

cumulatively, the affidavit, within its four corners, provided probable cause for the search warrant.

## II.   THE WARRANT CAN BE SAVED BY THE "GOOD-FAITH" EXCEPTION.

Because the Court finds that the search warrant affidavit included sufficient information to

provide probable cause, the Court need not find that the good-faith exception applies to conclude that

the evidence Quezada contests should not be suppressed.  Nevertheless, the Court believes that, if

probable cause were lacking, the good-faith exception would save the evidence seized from exclusion.

Considering all of the circumstances, and assuming that Ortiz and the other executing agents

had a reasonable knowledge of what the law prohibits, it would not have been unreasonable for Ortiz

and the other agents and officers to believe that Magistrate Judge Scott's authorization was legal.

See United States v. Reed, 2006 WL 3441532, at *8 (stating that, considering all the circumstances

and assuming  that the executing officers have a reasonable knowledge of the law, if a reasonably

well-trained officer would not have known the search was illegal, given the magistrate's

authorization, the good-faith exception applies)(internal citations and quotations omitted)(citing United States v. Corral-Corral, 899 F.2d at 931-32.  Stated another way,  a reasonably well-trained officer would not have known the search of Quezada's residence was illegal given Magistrate Judge Scott's authorization.  Quezada has not suggested that Ortiz recklessly disregarded the truth or knowingly relied on false information in preparing the search warrant affidavit, and, at the hearing, Ortiz testified that he look[ed] to corroborate very specific information from a reliable[,] credible informant, and to the very best of [his] ability . . . put [that] down on the warrant . . . ."  Transcript at 38:20-23.  At the hearing, Ortiz also stated: "I stand by my warrant a hundred percent."  Id. at 39:3-5.  Quezada has also not suggested that Magistrate Judge Scott failed to perform his neutral and detached role, or that the warrant was so facially deficient that the executing agents could not reasonably have presumed it was valid.  See United States v. Reed, 2006 WL 3441532, at *9 (providing situations in which an officer would not have reasonable grounds for believing that a search warrant was properly issued, and, thus, to which the good-faith exception would not apply)(citing United States v. Leon, 468 U.S. at 918, 923).  Moreover, given the Court's probable cause analysis, the Court does not believe that it can be convincingly asserted that Ortiz' affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  Id.  The Court notes that the good-faith exception applies to situations in which the same officer both drafts and executes the search warrant at issue.  See United States v. Beck, No. 04-4210, 2005 WL 1649310, at **7-8 (10th Cir. July 14, 2005)(Browning, J., sitting by designation).  As such, the Court concludes that, if probable cause was lacking, the good-faith exception to the exclusionary rule would apply to save the evidence obtained pursuant to the execution of the search warrant for 4712 Shana Lane that Magistrate Judge Scott issued.

-15-

Because the Court finds that the search warrant affidavit provided probable cause to search Quezada's residence, and because, in the alternative, the good-faith exception would apply, the Court will grant Quezada's suppression motion in part and deny it in part.

**IT IS ORDERED** that the Defendant's Motion to Suppress Evidence and Statements is granted in part and denied in part.  The Court will grant the Defendant's request for an evidentiary hearing to support his motion.  The Court will deny his request for suppression.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

David C. Iglesias
  United States Attorney
Kenneth J. Gonzales
  Assistant United States Attorney
   United States Attorney's Office
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

Mario A. Esparza
Las Cruces, New Mexico

  *Attorney for the Defendant*

-16-