## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                          No. CR 06-2262 JB

ENRIQUE QUEZADA-ENRIQUEZ,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Defendant's Sentencing Memorandum, filed June 6, 2007 (Doc. 46); and (ii) the Amended Defendant's Sentencing Memorandum, filed June 18, 2007 (Doc. 49)("Amended Memo"). The Court held a sentencing hearing on July 30, 2007. The primary issue is whether the Court should use Defendant Enrique Quezada-Enriquez' imperfect-justification defense as a basis for a downward departure under the Sentencing Guidelines or for a variance from the advisory Guidelines' sentence. Because Quezada-Enriquez cannot establish the elements of the justification defense, and because the "nature and circumstances of the offense" factor does not outweigh the other factors that the Court must consider under 18 U.S.C. § 3553(a), the Court will deny Quezada-Enriquez' request for a downward departure and for a variance, and will sentence him in a manner consistent with the sentence that the Guidelines recommend.

## FACTUAL BACKGROUND

At the time of his arrest, Quezada-Enriquez was living with his family at 4712 Shana Lane SW in Albuquerque, New Mexico. <u>See</u> Amended Memo at 1; United States' Response to Defendant's Sentencing Memorandum filed June 7, 2007 at 1, filed July 27, 2007 (Doc.

50)("Response"). Quezada-Enriquez owned and, at that time, occupied the residence. <u>See</u> Amended Memo at 1; Response at 1; Pre-Sentence Investigation Report ¶ 62, at 17, disclosed May 25, 2007 ("PSR"). Quezada-Enriquez represents that this part of Shana Lane is in a gang-infested neighborhood riddled with violence, and with crime against persons and property. <u>See</u> Amended Memo at 1-2; Exhibit 1, Bernalillo County Sheriff's Department Crime Statistics for Beat 734 (2006). Quezada-Enriquez asserts that his neighborhood is a very dangerous part of the city where many individuals are known to carry concealed weapons. <u>See</u> Amended Memo at 1-2.

Quezada-Enriquez represents that his house was broken into and burglarized numerous times, and that, on several occasions, he has been physically attacked and beaten when his home was invaded. <u>See</u> <u>id.</u> He contends that most residents of this neighborhood keep firearms in their homes for protection as a reasonable response to this danger. <u>See</u> <u>id.</u> He asserts that, because it is common knowledge that residents of the neighborhood have guns in their houses, the "hoods" who break into homes in this area also arm themselves. <u>See</u> <u>id.</u>

Quezada-Enriquez represents that, in the days immediately preceding his arrest, he received credible information that his house would be the target of another home invasion. <u>See</u> <u>id.</u> at 2. Quezada-Enriquez states that he viewed going to the police about these threats to be a waste of time, because, in the past, they have told him that there is nothing that they can do unless and until his home is broken into. <u>See</u> <u>id.</u> Quezada-Enriquez submits that the police's response did little to ameliorate his concerns, because he lives with his wife, his mother-in-law, and two young children, one of whom is mentally retarded. <u>See</u> <u>id.</u> Quezada-Enriquez states that, for all of these reasons, and especially taking into account his good-faith belief that his house would be broken into any day, he felt compelled to keep a firearm in his home for self-protection and for the protection of his family. <u>See</u> <u>id.</u> Quezada-Enriquez represents that these were the only reasons why the firearm was

in his house.  See id.

In September 2006, agents from the Bureau of Alcohol, Tobacco, and Firearms ("ATF")
secured a search warrant for 4712 Shana Lane.  See PSR ¶ 13, at 5.  The warrant for the search was
based on information that Special Agent Frank Ortiz III received from a confidential informant
("CI") and from his follow-up investigation.  See id. ¶¶ 7-13, at 4-5; Response at 1-2.  Ortiz
prepared the affidavit and application for the search warrant, incorporating the information he
received directly from the CI and from his independent investigation.  See PSR ¶¶ 7-13, at 4-5;
Response at 1-2.  Based in significant part on the foregoing information, the Honorable Robert H.
Scott, United States Magistrate Judge, found that probable cause existed to issue a search warrant
on September 25, 2005.  See PSR ¶¶ 7-13, at 4-5; Response at 1-2.

On the next day, September 26, 2006, ATF agents executed the search warrant on the
residence at 4712 Shana Lane.  See PSR ¶ 14, at 5.  The agents first encountered Quezada-Enriquez'
spouse, Ana Tovar, and asked her whether there were any firearms in the residence.  See id. ¶ 46,
at 13-14; Response at 2.  Tovar stated that her husband had a firearm for protection.  See Response
at 2.

The ATF agents then discovered the firearm and ammunition based on the warranted search.
The agents discovered a .45 caliber pistol, which was located in a kitchen cabinet of the residence
and which was loaded with three rounds of ammunition.  See id. at 1; PSR ¶ 14, at 5.  The agents
also discovered thirty-nine Remington Peters .45 Auto caliber cartridge ammunition in a television
cabinet.  See Response at 1; PSR ¶ 14, at 5.

As a result of the discovery, Quezada-Enriquez was advised of his Miranda rights.  See
Response at 2; PSR ¶ 15, at 5.  Quezada-Enriquez waived his rights, and was then questioned in
Spanish regarding the firearm and his illegal-immigration status.  See Response at 2; PSR ¶ 15, at

5.  Quezada-Enriquez admitted acquiring the firearm from an individual and having fired it.  <u>See</u> Response at 2.  He also admitted that he is in the United States illegally.  <u>See</u> PSR ¶ 15, at 5.

## PROCEDURAL BACKGROUND

On October 25, 2006, Quezada-Enriquez was indicted for violating 18 U.S.C. § 922(g)(5), alien in possession of a firearm.  <u>See</u> Indictment, filed October 25, 2006 (Doc. 16).  Quezada-Enriquez filed a motion to suppress physical evidence and statements on November 16, 2006.  <u>See</u> Motion to Suppress Physical Evidence and Statements, filed November 16, 2006 (Doc. 25).  On February 1, 2007, the Court held an evidentiary hearing on Quezada-Enriquez' motion to suppress.  <u>See</u> Memorandum Opinion and Order at 1, filed February 5, 2007 (Doc. 36).  The Court issued its Memorandum Opinion and Order denying the motion to suppress on February 5, 2007.  <u>See</u> <u>id.</u>

Quezada-Enriquez represents that he contemplated asserting justification as a defense to the charge against him.  <u>See</u> Amended Memo at 2.  In the final analysis, however, he believed that he could not satisfy all of the required justification elements.  <u>See</u> Response at 3.  Quezada-Enriquez asserts that he believed that he would ultimately lose if he proceeded before a jury and that he thus chose to abandon the defense and opt, as an alternative, for acceptance of responsibility.  <u>See</u> <u>id.</u>

Quezada-Enriquez pled guilty on March 26, 2007, to being an alien in possession of a firearm and ammunition  in violation of 18 U.S.C. § 922(g)(5).  <u>See</u> Plea Agreement, filed March 26, 2007 (Doc. 44).  On May 25, 2007, the United States Probation Office ("USPO") disclosed the PSR.  <u>See</u> PSR at 2.  The USPO calculates a total-offense level of 12, <u>see</u> PSR ¶ 30, at 7, and assesses 3 criminal-history points, <u>see</u> <u>id.</u> ¶ 36, at 10, which results in a criminal-history category of II, <u>see</u> <u>id.</u>  Quezada-Enriquez' Guidelines' sentencing range is 12-18 months.  <u>See</u> <u>id.</u> ¶ 65, at 20.

Quezada-Enriquez submitted a sentencing memorandum in an effort to assist the Court in fashioning a fair and reasonable sentence.  <u>See</u> Doc. 46.  On June 18, 2007, Quezada-Enriquez

-4-

amended his sentencing memorandum to include crime statistics from the Bernalillo County Sheriff's Department.  See Doc. 49.  Quezada-Enriquez argues that the Court should deviate downward from the advisory Guidelines' imprisonment range, or vary from the sentence that the Guidelines recommend, to impose a sentence that is sufficient but not greater than necessary to accomplish the purposes of sentencing.  See Amended Memo at 5.

On July 27, 2007, Ortiz contacted both the Albuquerque Police Department ("APD") and the Bernalillo County Sheriff's Office ("BCSO") to determine whether and to what extent law enforcement officers have responded to any calls from 4712 Shana Lane.  See Response at 2. According to Ortiz, APD dispatch searched its database for the period beginning January 1991 and ending January 2007.  See id.  APD dispatch found no record of any calls from 4712 Shana Lane during that period.  See id.

According to Ortiz, BCSO dispatch also searched its records and determined that there were four "call outs" to 4712 Shana Lane during the last three years: (i) suspicious vehicle reported, no date; (ii) harassing calls to residence; (iii) traffic violation (car blocking driveway); and (iv) disorderly conduct.  See id. at 2-3.  Neither APD nor BCSO report any responses to calls from 4712 Shana Lane relating to residential burglary or assaults.  See id. at 3.

The United States requests that the Court deny Quezada-Enriquez' move for a reduced sentence and sentence Quezada-Enriquez within the range that the Guidelines recommend.  See Response at 6.

## LAW REGARDING THE DEFENSE OF JUSTIFICATION

The United States Court of Appeals for the Tenth Circuit has recognized justification as a defense for a prohibited person who possesses a firearm.  See United States v. Marquez, No. 90-1230, 1991 WL 145264, at *2 (10th Cir. 1991)(noting that a felon, who, reacting out of a reasonable

fear for his or her safety, takes temporary possession of a firearm, may successfully assert a justification defense)(citing United States v. Panter, 688 F.2d 268, 272 (5th Cir. 1982); United States v. Vigil, 743 F.2d 751, 755-56 (10th Cir. 1984)(citing United States v. Gant, 691 F.2d 1159 (5th Cir. 1982)).  Specifically, the Tenth Circuit has recognized justification as a defense to a charge under 18 U.S.C. § 922(g)(1), a felon in possession of a firearm.  See United States v. Vigil, 743 F.2d at 755 (discussing § 922(g)(1)'s predecessor 18 U.S.C. § 1202(a)(1)).  See also United States v. Salgado-Ocampo, 159 F.3d 322, 326-27 (7th Cir. 1998)(acknowledging justification as a defense to § 922(g)(5), an illegal alien in possession of a firearm).

Justification is an affirmative defense.  See United States v. Gant, 691 F.2d at 1165. Accordingly, the defendant has the burden of demonstrating that he is entitled to the defense.  See id. ("[S]ince the justification defense[] [is an] affirmative defense[], defendant must demonstrate each element before he may successfully raise the defense of [] necessity.").  To establish entitlement to a justification defense for firearm possession, a defendant must show:

> [i] that defendant was under an unlawful and present, imminent, and impending [threat] of such a nature as to induce a well-grounded apprehension of death or serious bodily injury; [ii] that the defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be [forced to choose the criminal conduct]; [iii] that the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm; and [iv] that a direct causal relationship may be reasonably anticipated between the [criminal] action taken and the avoidance of the [threatened] harm.

United States v. Vigil, 743 F.2d at 755 (quotations and citations omitted).  "Because federal firearms laws impose something approaching absolute liability, it is extremely difficult to raise successfully a justification defense. . . ."  United States v. Marquez, 1991 WL 145264, at *2.  "[O]nly in the most extraordinary circumstances . . . will the [justification] defense entitle the [person prohibited from possessing a weapon] to arm himself in advance of a crisis merely because he fears, however

-6-

sincerely and reasonably, that he is in serious danger of deadly harm." United States v. Salgado-Ocampo, 159 F.3d at 326 (quoting United States v. Perez, 86 F.3d 735, 737 (7th Cir. 1996)(Posner, C.J.)). See United States v. Perrin, 45 F.3d 869, 874 (4th Cir. 1995)("[I]t has been only on the rarest of occasions that our sister circuits have found defendants to be in the type of imminent danger that would warrant the application of a justification defense.").

The first element of the defense demonstrates that there must be some sort of temporal proximity between the danger to the defendant and his possession of the firearm.  Three dangers are contemplated: present, imminent, and impending.  See United States v. Vigil, 743 F.2d at 755.  The word "present" connotes an instantaneous occurrence: one that occurs "without a lapse of time." Random House Unabridged Dictionary 956 (2d ed. 1993)(defining "immediate").  By contrast, an "imminent" or "impending threat" indicates a future hazard: one that is "about to happen."  Id. at 959 (defining "impending").  The appeals courts have very strictly construed the temporal proximity element.  See United States v. Salgado-Ocampo, 159 F.3d at 326-27 (noting that "later" and "imminent" are opposites); United States v. Perrin, 45 F.3d at 874.

The third element of the justification offense -- that the defendant must not have had a reasonable, legal alternative to violating the law -- requires that the defendant demonstrate that "he had actually tried the alternative or had no time to try it, or that a history of futile attempts revealed the illusionary benefit of the alternative. . . ."  United States v. Vigil, 743 F.2d at 756.  "For the necessity defense to be available the case must be one of absolute and uncontrollable necessity; and this must be established beyond a reasonable doubt . . . .  Any rule less stringent than this would open the door to all sorts of fraud."  United States v. Lewis, 628 F.2d 1276, 1279 (quoting United States v. The Diana, 7 Wall (74 U.S.) 354, 361 (1868))(internal quotations omitted).

The United States Court of Appeals for the Seventh Circuit's decision in United States v.

Salgado-Ocampo is instructive.  There, the defendant asked his wife's friend to leave his house, the friend subsequently called the defendant at 7:30 p.m. and told him he and another individual were going to come back to the house and shoot him, the defendant, ostensibly for protection, then borrowed a pistol from a neighbor, the friend and another individual arrived at the defendant's house later in the evening, and the defendant brandished the pistol to frighten them away.  See id. 159 F.3d at 324, 326-27.  The Seventh Circuit determined that the defendant failed to satisfy the elements of a justification defense.  In doing so, the Seventh Circuit stated that, "[a] single threat conveyed over a telephone, while serious, generally does not contain the necessary imminence required to make out a justification defense" and that the phone call did not make it clear that the threat would ever be carried out imminently or at all.  Id. at 326-27.  The Salgado-Ocampo court ruled accordingly that the threats were insufficiently imminent for the defendant to arm himself in violation of federal law. See id. at 327.  The Seventh Circuit also found that the defendant did not satisfy the reasonable, legal alternative element, because, even if he did not want to involve the police because of his immigration status, "he could have taken his wife and children with him and left the house," rather than borrow a firearm from a neighbor.  Id.

### LAW REGARDING GUIDELINE SENTENCES

The Supreme Court of the United States' holding in United States v. Booker, 543 U.S. 220 (2005), "requires a sentencing court to consider Guideline ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well."  Id. at 245-46.  Under the new advisory Guidelines' scheme, "district courts have a freer hand in determining sentences."  United States v. Trujillo-Terrazas, 405 F.3d 814, 819 (10th Cir. 2005).  Thus, "while the Guidelines will exert gravitational pull on all sentencing decisions . . . district courts now have more discretion to tailor sentences to the individual circumstances of a defendant."  Id.

-8-

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D).  See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal Statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.").  To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and the defendant's character; (iii) the available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference.  See Rita v. United States, 127 S. Ct. 2456, 2464 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant because "the

Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." United States v. Cage, 451 F.3d at 593 (internal quotations omitted).  A sentencing court must now consider all the factors enumerated in 18 U.S.C. § 3553, including the Guidelines, and resolve conflicts between them.

In Justice Breyer's remedial opinion in United States v. Booker, the Supreme Court recognized the important role that the advisory Guidelines continue to play in facilitating Congress' goal of achieving national uniformity of sentencing.  See 543 U.S. at 246.  To conform with Congressional intent, sentences must be "reasonable."  Id. at 260-61.  Consistent with that recognition, the Tenth Circuit has adopted a two-step approach to reviewing criminal sentences for reasonableness.  See United States v. Kristl, 437 F.3d 1050, 1055 (10th Cir. 2006).  First, the Tenth Circuit reviews the district court's consideration of the applicable Guidelines' range; if "the district court properly considered the relevant Guidelines range and sentenced the defendant within that range, the sentence is presumptively reasonable."  Id.  Second, once this presumption is established, "[t]he presumption can be rebutted by demonstrating the sentence is unreasonable when considered against the other factors enumerated in 18 U.S.C. § 3553(a)."  United States v. Dazey, No. 05-6258, 2007 U.S. App. LEXIS 15547, at *27 (10th Cir. June 27, 2007)(unpublished).

On the other hand, criminal sentences that vary materially from the properly calculated Guidelines' sentencing range are not accorded a presumption of reasonableness.  See United States v. Cage, 451 F.3d at 594-95.  The Tenth Circuit has explained that "the strength of the justification needed to sustain an outside-Guidelines sentence varies in proportion to the degree of the variance."  Rita v. United States, 127 S. Ct. at 2467 (citing United States v. Bishop, 469 F.3d 896, 907 (10th

Cir. 2006)).[1]

Finally, the Supreme Court has recently explained that the presumption of reasonableness afforded Guidelines' sentences is "an appellate court presumption" and emphasized that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." Rita v. United States, 127 S. Ct. at 2465. More specifically, "[a] nonbinding appellate presumption that a Guidelines sentence is reasonable does not require the sentencing judge to impose that sentence." Id. at 2466 (emphasis in original).

## ANALYSIS

At the sentencing hearing, Quezada-Enriquez stated that he did not have any dispute with the PSR. See Transcript of Hearing at 3:3:19 (Esparza)(taken July 30, 2007).[2] He also clarified that he was requesting both a downward departure under the Guidelines and a downward variance from the sentence that the Guidelines recommend. See id. at 4:21-5:1. The Court has carefully considered the nature and circumstances of the offense, the applicable provisions in the Guidelines, and the factors set forth in § 3553(a), and the Court does not believe that a sentence that departs or varies from the sentence that the Guidelines recommend is warranted.

### 1.   **Downward Departure.**

Quezada-Enriquez contends that his possession of the charged firearm was necessary to

---

[1] In its June 21, 2007 opinion in Rita v. United States, the Supreme Court indicated that it will evaluate the Tenth Circuit's approach next term in United States v. Gall, No. 06-7949. Rita v. United States, 127 S. Ct. at 2467 (citing United States v. Bishop, 469 F.3d at 907, and cases from the First, Fourth, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits). The Supreme Court cautioned, however, that "[t]he fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that courts may adopt a presumption of unreasonableness" for sentences that fall outside the Guidelines' range. Rita v. United States, 127 S. Ct. at 2467.

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

protect himself and his family, basing his argument on an imperfect defense of justification.  See Amended Memo at 2.  He argues that the Court should grant him a downward departure based upon that circumstance.  See id. at 2, 5.  In support of his contention, he represents that the neighborhood in which he and his family reside is dangerous, gang infested, and violent.  See id. at 1-2.  Quezada-Enriquez also submits that many individuals in his neighborhood are known to carry firearms.  See id.  He further represents that his house had been broken into and burglarized numerous times, that he had been physically attacked when his home has been invaded, and that he received, in the days immediately preceding his arrest, credible information that his house would be the target of another home invasion.  See id.

The Court does not believe that Quezada-Enriquez' imperfect-justification argument warrants the granting of a downward departure from the sentence that the Guidelines recommend. "[O]nly in the most extraordinary circumstances . . . will the [justification] defense entitle the [person prohibited from possessing a weapon] to arm himself in advance of a crisis merely because he fears, however sincerely and reasonably, that he is in serious danger of deadly harm."  United States v. Salgado-Ocampo, 159 F.3d at 326.  Quezada-Enriquez has not presented evidence sufficient to demonstrate that his possession of a firearm was justified, or that his imperfect defense is so strong or close to a complete defense that the Court should depart under the Guidelines.

Quezada-Enriquez has not established that he was under a threat of present, imminent, or impending death or bodily harm.  He has not presented information concerning when the home invasion of which he was informed was set to occur.  See id. (construing strictly the justification defense's temporal-proximity element, noting that "later" and "imminent" are opposites, and ruling that the threats the defendant faced were insufficiently imminent for the defendant to arm himself in violation of federal law); United States v. Perrin, 45 F.3d at 874.  Further, Quezada-Enriquez has

-12-

failed to show that he had no reasonable legal alternative to possessing a firearm; he has not demonstrated that "he had actually tried [an] alternative or had no time to try [one], or that a history of futile attempts revealed the illusionary benefit of [an] alternative. . . ." United States v. Vigil, 743 F.2d at 756.  The Court notes that, while Quezada-Enriquez states that he viewed going to the police to be a waste of time, because, in the past, they told them there was nothing they could do about home invasion threats unless and until his home was broken into, see Amended Memo at 2, there is no record of any calls having been placed from Quezada-Enriquez' residence to either APD or BCSO regarding home invasions, see Response at 3.  Quezada-Enriquez has not shown that he could not seek assistance from the police, or could not remove himself and his family from the residence, before the threatened invasion was to occur.  See United States v. Salgado-Ocampo, 159 F.3d at 327 (finding that the defendant did not satisfy the reasonable, legal alternative element of a justification defense, because, even if he did not want to involve the police because of his immigration status, "he could have taken his wife and children with him and left the house," rather than borrow a firearm from a neighbor).

Accordingly, the Court finds that a downward departure is inappropriate.  Even if a downward departure is authorized under the Guidelines, the Court does not believe that the facts and circumstances of this case warrant a departure.  While Quezada-Enriquez may be able to establish some of the elements of a justification defense, he cannot, by his own admission, satisfy all the elements, and does not have strong, or any, evidence for some elements.  His proffer does not suggest to the Court that he has a strong case for even an imperfect-justification defense -- he had time to select other alternatives before the anticipated home invasion.

In any case, the Court chooses not to depart.  Unfortunately, many illegal aliens, because of their poverty, do not live in the safest neighborhoods in the United States, and if the Court began

-13-

to excuse gun ownership for those illegal aliens, the exception would soon swallow the rule. The Court has trouble distinguishing Quezada-Enriquez' case from many others that it and other federal courts see. The Court believes his case fits into the heartland of cases that the Sentencing Commission took into account when it developed the advisory Guidelines' range that it did for Quezada-Enriquez' offense. The Court believes that Quezada-Enriquez' case fits within the heartland of cases that it and other federal courts see in the immigration area, and does not believe that his circumstances warrant a departure.

### 2. __Downward Variance.__

Citing 18 U.S.C. § 3553(a) and <u>United States v. Booker</u>, and presenting the same argument and background circumstances he used to support his request for a departure based on justification, Quezada-Enriquez contends that the advisory Guidelines' sentencing range is lengthier than necessary to accomplish the purposes of sentencing. <u>See</u> Amended Memo at 4-5. In doing so, Quezada-Enriquez relies heavily on § 3553(a)'s "the nature and circumstances of the offense" factor. <u>See</u> <u>id.</u>

The problem with Quezada-Enriquez' analysis is that it emphasizes only one factor, and it is not a very strong factor. While "the nature and circumstances of the offense" may slightly favor him, that factor does not strongly favor him. For the same reasons that the Court does not find Quezada-Enriquez' justification argument persuasive in the departure context, it does not find it persuasive in the variance context. Quezada-Enriquez has not demonstrated that the threatened home invasion was present, imminent, or impending; nor has he established that he had no reasonable, legal alternative to possessing a firearm illegally. The Court also notes that Congress has treated illegal immigration seriously, giving it severe sentences in comparison to other federal crimes; Congress has also decided that illegal aliens should not be armed in this country, without

exception.  Moreover, Quezada-Enriquez has not shown respect for the law while he has been in this country illegally.  He has been arrested eight times as an adult.  <u>See</u> PSR ¶¶ 32-41, at 8-12.  Those arrests led to misdemeanor convictions for Refusing to Obey Police and Fire Department, Failure to Appear, Leaving the Scene of an Accident, Second Degree Aggravated Motor Vehicle Theft, Tampering, and Driving While Intoxicated, and to pending charges for No Valid Driver's License and Failure to Provide Identification.  <u>See</u> <u>id.</u> ¶¶ 32-35, 41, at 8-10, 12.  The respect for the law factor thus weighs heavily against Quezada-Enriquez.  He appears to have shown little respect for state or federal law while in the United States, and if the federal law in this case is to have much meaning, it should be enforced with some penalty to the offender.

Quezada-Enriquez should be punished for his crime, and the advisory Guidelines' sentence provides for just punishment.  Imprisonment appears to be the only sentence that will provide adequate deterrence and protect the public.  In sum, there does not appear to be any sound reason to override the other 18 U.S.C. § 3553(a) factors and the political will expressed in the advisory Sentencing Guidelines by unduly emphasizing the rather weak "nature and circumstances of the offense" factor in this case to justify a variance.

In sum, the Court has carefully considered the nature and circumstances of the offense, the applicable provisions in the Guidelines, and the factors set forth in § 3553(a).  The Court believes that the punishment set forth in the Guidelines is appropriate for Quezada-Enriquez' offense.  The Court believes that a sentence of 12 months and 1 day reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and effectively and fully reflects each of the factors embodied in 18 U.S.C. § 3553(a).  The Court also believes that such a sentence is reasonable.  The Court believes that the sentence is sufficient, but not greater than necessary, to comply with the purposes of punishment set forth in the

Sentencing Reform Act.

**IT IS ORDERED** that the Defendant's requests in his Sentencing Memorandum and in his

Amended Sentencing Memorandum for a downward departure and a downward variance are denied.

The Court will sentence at the low end of the advisory Guidelines' sentencing range and give the

Defendant a sentence of 12 months and 1 day.


UNITED STATES DISTRICT JUDGE


*Counsel*:

Larry Gomez
   Acting United States Attorney
Kenneth J. Gonzales
   Assistant United States Attorney
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Mario A. Esparza
Las Cruces, New Mexico

   *Attorney for the Defendant*

-16-